# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| PUTNAM BANK, Individually and on Behalf of All Others Similarly Situated,<br><br>                        Plaintiff,<br><br>   vs.<br><br>COUNTRYWIDE FINANCIAL CORP., COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE CAPITAL MARKETS, LLC, COUNTRYWIDE SECURITIES CORP., CWALT, INC., CWMBS, INC., BANK OF AMERICA CORP., BAC HOME LOANS SERVICING, LP, NB HOLDINGS CORP., ANGELO MOZILO, DAVID SAMBOL, ERIC SIERACKI, RANJIT KRIPALANI, STANFORD KURLAND, DAVID A. SPECTOR, N. JOSHUA ADLER, AND JENNIFER SANDEFUR,<br><br>                       Defendants. | Civil Action No. 3:11-cv-00145-JCH<br><br>**CLASS ACTION**<br><br>ORAL ARGUMENT REQUESTED |

### MEMORANDUM IN SUPPORT OF MOTION OF PUTNAM BANK FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................1

STATEMENT OF FACTS ...................................................................................................2

ARGUMENT .......................................................................................................................5

I. OVERVIEW OF APPLICABLE LAW ...................................................................5

II. PUTNAM SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS ..............6

    A. Putnam's Motion to Serve as Lead Plaintiff is Timely ............................6

    B. Putnam Is Believed to Have the Largest Financial Interest in the Relief Sought by the Class ............................................................................7

    C. Putnam Satisfies the Typicality and Adequacy Requirements of Rule 23 .............8

        1. Putnam's Claims Are Typical of the Claims of the Class ..........................9

        2. Putnam Will Fairly and Adequately Represent the Interests of the Class ............10

III. THE COURT SHOULD APPROVE PUTNAM'S CHOICE OF LEAD COUNSEL ..............11

IV. CONCLUSION .................................................................................................12

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Pages**

*Gen. Ret. Sys. of City of Detroit v. Wells Fargo Mortg. Backed Securities 2006-AR18 Trust*, No. C 09-1376, 2009 WL 2137094 (N.D. Cal. July 16, 2009) .......................................8

*In re Flight Safety Techs., Inc. Sec. Litig.*,
    231 F.R.D. 124 (D.Conn. 2005)..................................................................................8, 9

*In re Host America Corp. Sec. Litig.*,
    236 F.R.D. 102 (D.Conn. 2006)......................................................................................8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ......................................................................................8

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)..........................................2

*Linn v. Allied Irish Banks, PLC*,
    No. 02 Civ. 1738, 2004 WL 2813133 (S.D.N.Y. Dec. 8, 2004).....................................2

*New Jersey Carpenters Health Fund v. Structured Asset Mortg. Investments II, Inc.*, No. 08 Civ. 8093, 2009 WL 5103276 (S.D.N.Y. Dec. 23, 2009)..................................7, 8

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F. 2d 590 (2d. Cir. 1986)..........................................................................................9

*Sofran v. LaBranche & Co. Inc.*,
    220 F.R.D. 398 (S.D.N.Y. 2004) ...........................................................................8, 9, 10

**Statutes, Rules, Legislation**

15 U.S.C. §78u-4 ................................................................................................................ *passim*

15 U.S.C. §77z-1(a)(3)(B) ......................................................................................................1, 2

17 C.F.R. §240.10b-5................................................................................................................1

Fed.R.Civ.P. 23.........................................................................................................6, 8, 9, 10

Connecticut Uniform Securities Act, §36b-4...........................................................................1

Securities Act of 1933, §§11, 12(a)(2), 15, 27..........................................................................1

Securities Exchange Act of 1934, §§10(b), 20(a), 21D...........................................................1

**Other Authorities**

1 Herbert B. Newberg, *et al.*, *Newberg on Class Actions*, §3:13 (4th ed. 2010) ..........................10

# INTRODUCTION

Movant, Putnam Bank ("Putnam" or "Movant"), respectfully submits this memorandum of law in support of Putnam's motion for appointment as Lead Plaintiff in the Action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, *et seq.* and approval of Movant's selection of Scott+Scott LLP ("Scott+Scott") as Lead Counsel for the putative classes.[1]

The present matter is a class action brought on behalf of purchasers of certain mortgage-backed securities sponsored by affiliates of Countrywide Financial Corporation and its wholly-owned subsidiary Countrywide Home Loans, Inc. (collectively, "Countrywide"), alleging violations of the federal securities laws. The Action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") (15 U.S.C. §78u-4) and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5); Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"); and the Connecticut Uniform Securities Act, Section 36b-4.

Pursuant to §21D(a)(3)(B)(iii) of the Exchange Act and §27(a)(3)(B)(iii) of the Securities Act, the Court is to appoint the movant with the largest financial interest in the litigation that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii) and 15 U.S.C. §77z-1(a)(3)(B)(iii), respectively. Pursuant to §21D(a)(3)(B)(iii) of the Exchange Act and §27(a)(3)(B)(iii) of the Securities Act,

---

[1] The putative classes consist of a nationwide class and Connecticut sub-class, which will hereinafter be referred to, collectively, as the "Class."

1

the Court is also to approve the lead plaintiff's selection of lead counsel. *See* 15 U.S.C. §78u-4(a)(3)(B)(v) and 15 U.S.C. §77z-1(a)(3)(B)(v), respectively.[2]

This Court should appoint Putnam as Lead Plaintiff for the Class because, pursuant to the PSLRA, Putnam is the "most adequate" plaintiff to serve as Lead Plaintiff. Putnam satisfies each of the PSLRA's requirements for appointment as Lead Plaintiff and Putnam is believed to have the "largest financial interest" in the relief sought by the Class. Putnam's motion to be appointed Lead Plaintiff is timely, and its claims against the defendants in the Action are typical of the claims of the other Class members. Movant's interests also are aligned with the interests of the Class. Finally, Movant has retained qualified counsel, Scott+Scott LLP ("Scott+Scott") and will vigorously prosecute the Action.

## STATEMENT OF FACTS

The Action, commenced on behalf of purchasers of certain mortgage-backed securities sponsored by affiliates of Countrywide Financial Corporation and its wholly-owned subsidiary Countrywide Home Loans, Inc. (collectively, "Countrywide") and related trusts (the "Issuing Trusts"), issued between 2005 and 2007, charges the defendants with violations of the Securities Act, the Exchange Act and the Connecticut Uniform Securities Act. ¶1.[3]

The defendants named in the Complaint are Countrywide Financial Corporation; Countrywide Home Loans, Inc.; Countrywide Capital Markets, LLC, formerly known as Countrywide Capital Markets, Inc.; Countrywide Securities Corporation; CWALT, Inc.

---

[2] The lead plaintiff provisions of the Securities Act and the Exchange Act are interchangeable. *Linn v. Allied Irish Banks, PLC*, No. 02 Civ. 1738, 2004 WL 2813133, at *3 n.2 (S.D.N.Y. Dec. 8, 2004) (noting that "'the lead-plaintiff provisions of the 1933 and 1934 acts are identical'") (quoting *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *2 n. 2 (N.D. Ill. Aug. 11, 1997)). The Complaint alleges violations of both the Securities Act and Exchange Act and, as such, the lead plaintiff provisions of both are apposite to Putnam's Motion. However, because the lead plaintiff provisions of each are identical, for the sake of conciseness, Movant will cite to the lead plaintiff provisions in §21D of the Exchange Act rather than both.
[3] All ¶ and ¶¶ references are to the Complaint (ECF No. 1).

CWMBS, Inc.; Countrywide's former officers Angelo Mozilo, David Sambol, Eric Sieracki, Ranjit Kripalani, Stanford Kurland, David A. Spector, N. Joshua Adler, and Jennifer Sandefur; Bank of America Corporation; BAC Home Loans Servicing, LP; and NB Holdings Corporation. ¶¶16-32.

The specific mortgage-backed securities from which the Complaints claims stem, and which were purchased by Putnam, are: Countrywide mortgage pass-through certificates CWHL 2006-HYB2, CWALT 2005-43, CWHL 2006-12, CWALT 2007-1T1, CWALT 2007-12T1, CWHL 2007-J2, CWHL 2007-17 and CWALT 2007-25 (the "Certificates"). *Id.* The Complaint charges that the Certificates, issued between August 2005 and September 2007, were sold to Putnam and the Class pursuant to registration statements, prospectuses and prospectus supplements (the "Offering Documents") that contained untrue statements and omissions of material facts. ¶¶1-2.

The Certificates consist of securitized mortgage loans. The principal and interest payments due to purchasers of the Certificates are secured and derived from borrower payments. ¶3. As such, the value of the Certificates is directly tied to the value of mortgage loans underlying the Certificates, as well as the repayment of the underlying mortgages. *Id*. Distributions are made from borrower payments to Certificate investors through the Issuing Trusts in accordance with the terms of the Offering Documents governing the issuance of the Certificates. ¶4. In the event that borrowers fail to pay back their mortgages, default or are forced into foreclosure, the resulting losses flow to the Certificate purchasers, such as Putnam and the Class. *Id.*

The Complaint alleges that, in 2003, Countrywide began to systematically disregard the mortgage loan underwriting guidelines that were later stated in the Certificates' Offering

Documents. ¶5. Among other things, unknown to Putnam Bank and other purchasers of the Certificates, Countrywide had internally adopted a "matching" strategy that would approve any mortgage product feature offered by a competitor. ¶6. Under the matching strategy, numerous mortgages containing the worst features of mortgage products from different competitors were securitized in to the Certificates. *Id.* In addition, Countrywide set up a system whereby any loan would be approved by way of underwriting "exceptions," and coached borrowers on how to apply for loan products that required little or no income or asset verification. ¶7.

Because Countrywide was selling many of these loans, packaged and securitized as the Certificates, to institutional investors, such as Putnam, Countrywide did not worry about their deficient underwriting; by the time loans went bad, they were often in other hands. *Id.* Putnam Bank and other institutional investors were made to believe that they were buying highly-rated, safe securities backed by pools of loans with accurately represented risk. ¶8. However, the mortgage loans underlying the Certificates were a toxic mix of loans issued to borrowers that could not afford the properties, and thus subject to default. *Id.*

The Certificates were marketed to institutional investors – public pension funds, banks, insurance companies, and mutual funds – who were prohibited by regulation from purchasing securities not rated "investment-grade." ¶9. In order to circumvent regulatory requirements, Countrywide employed rating agencies to provide investment grade ratings for the Certificates. *Id.* The ratings assigned by the rating agencies, which were based on inaccurate data and were tainted by conflicts of interest between Countrywide and the rating agencies, were expressly included in the Offering Documents. *Id.*

In sum, Countrywide's material misrepresentations and omissions regarding the riskiness and credit quality of the Certificates, made through the Offering Documents included

4

misrepresentations and omissions regarding (a) the underwriting process of the mortgage loans; (b) the percentage of borrowers who would be occupying the property being mortgaged; (c) the loan-to-value ratios; and (d) rampant "exceptions" to Countrywide's underwriting guidelines. ¶10.

The Complaint alleges that the systemic abandonment of Countrywide's stated underwriting guidelines has predictably led to soaring default rates in the mortgage loans underlying the Certificates. ¶12. As a result, the market value of the Certificates purchased by Putnam and the Class has plummeted, causing significant financial losses. *Id.*

## ARGUMENT

### I. OVERVIEW OF APPLICABLE LAW

The PSLRA sets forth a procedure for providing notice to members of the putative class of the pendency of a class action, the claims asserted, and the purported class period. Specifically, the PSLRA provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I)   of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)  that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. §78u-4(a)(3)(A)(i).

The PSLRA also sets out the requirements for selection of lead plaintiffs to oversee class actions brought pursuant to the federal securities laws. 15 U.S.C. §78u-4(a)(3). There is a

rebuttable presumption that the "most adequate plaintiffs" to serve as lead plaintiffs are the person or group of persons that:

>   (aa)   has either filed the complaint or made a motion in response to [the] notice . . .;
>
>   (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>   (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). As set forth below, Putnam satisfies each of the PSLRA's statutory requirements to serve as Lead Plaintiff here.

## II. PUTNAM SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

The PSLRA provides guidelines for the appointment of a lead plaintiff in "each private action arising under [the securities laws] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Because Putnam is the "most adequate" movant, as defined by the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii), Movant should be appointed as Lead Plaintiff.

### A. Putnam's Motion to Serve as Lead Plaintiff Is Timely

As noted *supra*, within sixty days after the publication of a notice of a class action, members of the proposed class may move the Court to be appointed lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i)(II). Here, the published notice regarding this Action was published on January 28, 2011. *See* Declaration of David R. Scott ("Scott Decl."), filed herewith, Ex. A.[4] Movant has timely moved for appointment as Lead Plaintiff within sixty days of the notice, in

---

[4] An amended early notice was later filed on February 2, 2011, correcting the deadline for lead plaintiff submissions by announcing that the deadline falls on March 29, 2011 (rather than March 30, 2011, as indicated in the January 28, 2011 Notice.) *See* Scott Decl.. Ex. B.

compliance with the PSLRA. 15 U.S.C. §78u-4(a)(3)(A)(i)(II). Putnam therefore satisfies the PSLRA's initial requirement.

### B. Putnam Is Believed to Have the Largest Financial Interest in the Relief Sought by the Class

Pursuant to the PSLRA, this Court next determines which lead plaintiff applicants have the "largest financial interest" in the relief sought by the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). Although the PSLRA does not specifically indicate the manner in which the "largest financial interest" should be calculated, it provides that a movant's losses in any securities fraud class action may be measured by:

> [T]he difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.

15 U.S.C. §78u-4(e)(2).

Alternatively, when a movant continues to hold the security that is the subject of the action, damages may be measured by:

> [T]he difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. §78u-4(e)(1).

The method employed by the courts in ascertaining mortgage-backed securities purchasers' financial interest at the lead plaintiff appointment stage in securities litigation, such as here, is to simply consider the parties' total funds expended in acquiring the mortgage-backed securities. *See New Jersey Carpenters Health Fund v. Structured Asset Mortg. Investments II,*

7

*Inc.*, No. 08 Civ. 8093, 2009 WL 5103276, at *3 (S.D.N.Y. Dec. 23, 2009) (determining financial interest by considering the total funds expended acquiring the mortgage-backed securities in question); *Gen. Ret. Sys. of City of Detroit v. Wells Fargo Mortg. Backed Securities 2006-AR18 Trust*, No. C 09-1376, 2009 WL 2137094, at *8 (N.D. Cal. July 16, 2009) (same).

Putnam believes at this time that it has the "largest financial interest" in the relief sought by the Class by virtue of its expenditure of $33,788,145 acquiring Certificates subject to this action, and thus, is presumptively the "most adequate" plaintiff to serve as Lead Plaintiff.[5] *In re Host America Corp. Sec. Litig.*, 236 F.R.D. 102, 105 (D.Conn. 2006). Accordingly, Putnam satisfies the PSLRA's second requirement for appointment as Lead Plaintiff.

### C. Putnam Satisfies the Typicality and Adequacy Requirements of Rule 23

In addition to meeting the PSLRA's requisites set forth above, proposed lead plaintiffs must also satisfy the requirements of Fed.R.Civ.P. 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Fed.R.Civ.P. 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

For purposes of appointing lead plaintiffs, however, a wide-ranging analysis under Fed.R.Civ.P. 23 is not appropriate at this stage of the litigation. *Sofran v. LaBranche & Co. Inc.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004). Rather, only two requirements – "typicality" and "adequacy" – must be preliminarily satisfied by the proposed lead plaintiffs. *Id. See also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998). Typicality and adequacy are the key factors for a court's determination of lead plaintiffs. *See In re Flight Safety*

---

[5]   *See* Scott Decl., Ex. C, Schedule A.

*Techs., Inc. Sec. Litig.,* 231 F.R.D. 124, 128 (D.Conn. 2005). As discussed below, Movant satisfies both the typicality and adequacy requirements of Fed.R.Civ.P. 23(a), further supporting Putnam's appointment as Lead Plaintiff.

        1.        <u>Putnam's Claims Are Typical of the Claims of the Class</u>

Lead plaintiffs meet the typicality requirement in Fed.R.Civ.P. 23(a)(3) when their claims: (i) arise from the same events or course of alleged conduct by the defendants, and (ii) are based upon similar legal theories as the claims of the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F. 2d 590, 598 (2d. Cir. 1986); *see also Sofran*, 220 F.R.D. at 402. The typicality requirement does not require that lead plaintiffs' claims be identical with the claims of the other class members; rather, they need only share common elements of fact or law. *See Sofran*, 220 F.R.D. at 402.

Here, the questions of law and fact common to the members of the class that predominate over questions that may affect individual class members include the following:

    (i)    whether the Exchange Act was violated by defendants;

    (ii)    whether the Securities Act was violated by defendants;

    (iii)    whether the Connecticut Uniform Securities Act was violated by defendants; and

    (iv)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

As a result, there is a well-defined community of interest in the questions of law and fact involved in this case. The claims asserted by Movant, which acquired the Certificates, are typical of the claims of the members of the proposed Class. Because the claims asserted by Putnam are based on the same legal theories and arise "'from the same event or practice or course of conduct that gives rise to the claims of other class members,'" – *i.e.,* the alleged series

of materially false and misleading statements in the Offering Documents concerning the underwriting of the mortgages underlying the Certificates – typicality is satisfied.  *See* 1 Herbert B. Newberg, *et al.*, *Newberg on Class Actions*, §3:13 (4th ed. 2010).

### 2.  Putnam Will Fairly and Adequately Represent the Interests of the Class

In evaluating the adequacy of proposed lead plaintiffs, the court limits its inquiry to the existence of any conflicts between the interests of the proposed lead plaintiffs and the members of the class.  The primary elements of the adequacy requirements of Fed.R.Civ.P. 23(a)(4) are that: (i) the class representatives' interests are not antagonistic to those of the class; and (ii) the class counsel is "'qualified, experienced, and generally able to conduct the . . . litigation.'"  *See Sofran*, 220 F.R.D. at 403.

Here, Putnam will more than adequately represent and protect the interests of the Class.  First, Putnam's interests are clearly aligned with the members of the proposed Class and there is no evidence of any antagonism between its interests and the interests of the proposed Class members.  Second, as detailed above, Movant shares substantially similar questions of law and fact with the members of the proposed Class and its claims are typical of the members of the Class.  Third, Putnam has amply demonstrated that it will adequately serve as Class representative by filing this Action on behalf of the Class and further signing a sworn certification affirming its willingness to serve as, and assume the responsibilities of, Class representative.  *See* Scott Decl., Ex. C.  Finally, Putnam has taken significant steps that will promote the protection of interests of the Class: specifically, Movant carefully evaluated the litigation and selected proposed lead counsel who are qualified, experienced and able to conduct this complex litigation in a professional manner.  *See id.*, Ex. D.  Clearly, Putnam satisfies the

requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action.

### III.     THE COURT SHOULD APPROVE PUTNAM'S CHOICE OF LEAD COUNSEL

Pursuant to the PSLRA, lead plaintiffs are permitted, subject to the Court's approval, to select and retain counsel to represent the Class.  15 U.S.C. §78u-4(a)(3)(B)(v).  Putnam has selected and retained Scott+Scott to represent them and the putative Class.  Notably, here, liaison counsel is unnecessary because Scott+Scott is headquartered in Colchester, Connecticut with Connecticut lawyers who will be prosecuting this case.

As fully set forth in Exhibit D to the Scott Decl., proposed Lead Counsel Scott+Scott has served as lead or co-lead counsel in many high profile class actions, including those that were prosecuted in this district, recovering hundreds of millions of dollars for investors and others harmed by corporate mismanagement, and forcing a number of important corporate reforms. Scott+Scott recently obtained a settlement of $80 million for a class of purchasers of Priceline stock in *In re Priceline.com Sec. Litig.*, No. 00-01844-DJS (D.Conn.), and has successfully prosecuted through settlement other securities fraud class actions in this district, including *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-02133-EBB (D.Conn.) (settlement of $26.5 million) and *In re Host America Sec. Litig.*, No. 05-CV-1250-VLB (D.Conn.) (settlement of $3 million).  Scott+Scott likewise obtained a $122 million settlement for purchasers of Mattel stock in *Thurber v. Mattel, Inc*., No. 99-10368 (C.D. Cal.).  Additional recent securities settlements obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Emulex Corp. Sec. Litig.*, No. 01-00219 (C.D. Cal.) (settlement of $39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Cir. Ct. Jackson County, Mo.) (settlement of $50 million); *In re Northwestern Corp. Sec. Litig*., No. 03-04049 (D.S.D.) (settlement of $61 million); *Irvine v. Imclone Systems,*

*Inc.*, No. 02-00109 (S.D.N.Y.) (settlement of $75 million); *In re Qwest Communications International, Inc.*, No. 02-08188 (Colorado District Court, City and County of Denver) (shareholder derivative settlement including significant corporate governance reforms and $25 million for the company); and *In re Lattice Semiconductor Corp. Deriv. Litig.*, No. 043327 (Cir. Ct. Oregon) (significant monetary recovery and business reforms, including termination of the then-CEO, termination and adoption of significant changes to the company's auditing, insider trading, executive compensation and other internal practices), among other recoveries and actions.

Accordingly, approval of Putnam's selection of counsel and appointing Scott+Scott as lead counsel is appropriate.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant Putnam's motion for appointment as Lead Plaintiff and approve its choice of Scott+Scott as Lead Counsel for the putative Class.

Dated: March 29, 2011

Respectfully submitted,
**SCOTT+SCOTT LLP**

By: /s/ Amanda F. Lawrence
David R. Scott (CT 16080)
Amanda F. Lawrence (CT 27008)
156 South Main Street
Colchester, CT 06415
Tel.: 860-537-5537
Fax: 860-537-4432
Email: drscott@scott-scott.com
Email: alawrence@scott-scott.com

Geoffrey M. Johnson (*pro hac vice* application forthcoming)
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44106

Tel.:  216-229-6088
Fax:  216-229-6092
Email:  gjohnson@scott-scott.com

*Attorneys for Movant Putnam Bank*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2011, the foregoing Memorandum in Support of Motion of Putnam Bank For Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel was filed electronically with the Court's Case Management/Electronic Case Files (CM/ECF) docketing system.  Notice of this filing will be sent to all parties by operation of the CM/ECF system.  Parties may access this filing through the CM/ECF system.

/s/     Amanda F. Lawrence
Amanda F. Lawrence (CT 27008)
SCOTT+SCOTT LLP
156 South Main Street
Colchester, CT 06415
Tel.:  860-537-5537
Fax:  860-537-4432
Email:  alawrence@scott-scott.com

*An Attorney for Movant Putnam Bank*